Good morning, Your Honors, and may it please the Court. My name is John Sumilas. I represent the appellant, Randall Ferguson. In this appeal from the grant of summary judgment to the appellee, Wells Fargo, of the Central District of California, we urge a reversal of that ruling because we believe that the District Court interpreted both the Fair Credit Reporting Act factual record here much too narrowly. The District Court found that Wells Fargo was not the furnisher of the disputed information in this case that my client, Mr. Ferguson, disputed through the TransUnion Consumer Reporting Agency. We believe that there could be no other furnisher. There is a furnisher and a consumer reporting agency in this case as there is in almost every FCRA case and Wells Fargo is the furnisher and they are the furnisher of the disputed information. This is not a case where there is a servicer of a loan or a debt collector or an entirely different business that might have furnished information to a consumer reporting agency. We believe that the District Court viewed this case as a 30,000-foot level and we think it should be viewed much closer to the ground. We think that this Court should look at the actual disputes, which are what are called the ACDVs in a case like this. They are the automated consumer dispute verifications that are used in the credit reporting industry to have communications between banks, which furnish information to businesses like TransUnion, which are consumer reporting agencies. In this case, the consumer does not know that these forms exist, does not know the particular codes on the forms. No consumer could ever guess that he is disputing the consumer information in the air. Does the consumer ever see those forms? The consumer never sees those forms. The consumer could communicate with a consumer reporting agency either online or with a regular letter or by phone and explain in plain English what the problem is. And the problem is the account is wrong. I paid it off. It shouldn't have a balance. I certainly didn't file a bankruptcy. My co-obligor, Lila Shipman, filed a bankruptcy. That dispute, for better or for worse, is through these forms that the industry uses, the ACDV forms. And in this case, those forms show who the furnisher is. It went to Wells Fargo because they couldn't have gone to anybody else. They show what the dispute was, the status, the remarks, the bankruptcy, the fact that the account was not in a disputed status, which is also very important in this case. And our view is when you look at those forms, there is very little doubt as to who the furnisher is. We were quite surprised, I should say, by the district court's decision because there wasn't much controversy in the briefing. There were two instances of information being furnished, as I understand this. Someone apparently told TransUnion that your guy had a bankruptcy. And then when your guy complained about it, TransUnion contacted Wells Fargo. And again, they respond. Are you talking about the first information about there being a bankruptcy, or are you talking about the response to the inquiry? Judge Silverman, we believe that both the initial supplying of information before there's a dispute is furnishing information. And we believe that Okay. How do we know that Wells Fargo furnished that information from the get-go? What we don't know in this case, one way or the other, is whether Wells Fargo furnished the consumer information indicator to TransUnion in the first place. We don't know that. We don't know that. Neither side knows that. No one knows when it happened, how it happened, if it was a computer error, a human error. We don't know. We do know without a shadow of a doubt that Wells Fargo furnished data about the account, including the status, the balance, and every other item of information about that account. There was nobody else furnishing information about that account. And we do know that upon the two disputes through the ACDBs, Wells Fargo again furnished data about that account, including, in our view, its failure to correct that bankruptcy remark, even though its own industry standards, which are used to interpret those very forms, indicate it should have used a cue code in this case and didn't do it. Other banks do it. Our expert tells us that that's how it's done. Wells Fargo just didn't do it in this case. And the point that I'd like to make here, Your Honors, is that there are plenty of cases like this where we don't know where the error originated. Who created it? Was it a computer error, a human error? What if there was a mistranslation of the data and TransUnion wants to go back to its furnisher and say, is this correct? The district court's decision suggests that a furnisher could abdicate that responsibility by simply saying, oh, we didn't give you exactly that code, so we don't have to do anything. Well, how's the problem going to get corrected? The Fair Credit Reporting Act contemplates a qualitative investigation by both the furnisher under Section 1681S2B of the statute and the Consumer Reporting Agency under Section 1681IA of the statute. Both have this duty, and the reason why they both do, and it's because so important, because sometimes we don't know where the error came from. And we're not so concerned about where the error came from. The statute is not. Congress is not. I think the focus should be on correcting it, and in this case, Wells Fargo had the power to correct it and failed to do so, and we claim that it's so negligently and also willfully. But the issue of whether Wells Fargo should have been the furnisher, in our view, is a very clear issue. Wells Fargo acted as a furnisher. Wells Fargo says it conducted investigations because it believed it was the furnisher. Wells Fargo modified other aspects of this case, had control over that account. And our view that the district court's decision places an inordinate burden on a consumer to somehow guess where an electronic communication lay between a furnisher and a Consumer Reporting Agency and prove affirmatively who created the problem in the first place has no basis in the statute and creates enormous practical problems for consumers who frankly don't know. They know there's something wrong with their credit report, and they follow instructions on how to correct those errors. And that's what happened here. And we believe Wells Fargo is the furnisher who could have corrected that. Did you want to save any time, Mr. Sorensen? I really appreciate that, Your Honor. I regret that I didn't ask for a rebuttal, but I do have about two and a half minutes left, and I'd like to save that now if there are no further questions. You bet. Thank you very much. I appreciate it. Thank you. Good morning. Good morning, Your Honors. Eric Kemp, appearing for Wells Fargo Bank. This case, in our view, is quite simple and boils down to two basic points. The first point is that there's no evidence that Wells Fargo ever furnished the mistaken bankruptcy remark that appeared on the TransUnion credit report. Does that really matter when Wells Fargo is given a form and asked to correct it or verify it? Does it really matter who was the first furnisher if Wells Fargo could have corrected that information and didn't, and so negatively furnished information? It does matter, Your Honor. And the reason is the statute is set up so that the duty to reinvestigate applies only with respect to information that the furnisher furnished. And that's the second point I wanted to mention. There are five duties under 1681S2B. Each applies only with regard to a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency. Let me see if I understand what you're saying. If TransUnion sends an inquiry to Wells Fargo Bank and says we have information about a Wells Fargo account, your contention is if the bank didn't furnish the information to begin with, they don't even have to respond to it. Is that what you're saying? I think that the bank can't be held liable under the statute, under the plain language, and that's the result that three courts have reached, including the Seventh Circuit. Do they have to respond to the inquiry? I think the bank has to respond to the inquiry because it did furnish some information. Okay. Now, if they have to respond to the inquiry, do they have to respond accurately to the inquiry? Yes. Well, they say when the bank made this, when TransUnion made the inquiry, the bank responded inaccurately. It put down a Q or they put down a left it blank instead of putting in a Q. The bank did not respond inaccurately, Your Honor. When it received both notices, it conducted an investigation and determined that it had never furnished the Chapter 7 bankruptcy. Did it send back the form with the field left blank? It sent back the form with the field left blank. They say that's wrong. Under the standard of the industry, they should have put a Q in there instead. That's not correct, Your Honor. First of all. Well, isn't that a factual dispute? I think it's a legal issue first. Well, I mean, they have, you have somebody who says it's okay to leave it blank. They have somebody who says you're supposed to put a Q in there. Why isn't that a factual dispute? Well, because I think you can resolve it as a matter of law first if I could answer that question. As this Court explained in the Drew case, the obligation to modify or delete inaccurate information is designed to prevent a furnisher from continuing to report inaccurate information after the investigation takes place. In this case, there's no evidence at all that Wells Fargo furnished the Chapter 7 remark in the first place. We were past that. Now they're, they inquire about it and Wells Fargo sends back the form. Instead of throwing it away, you know, they send it back and they leave this pertinent field blank. What's the answer to that? The Q code, Your Honor, is designed to delete information that the furnisher has previously provided. So you still have to get to the threshold question, did Wells Fargo previously provide this Chapter 7 remark to the consumer reporting agencies? And there's no evidence at all that that ever occurred. You keep wanting us to return to before the ACDV, I don't know if I have that right, was sent to Wells Fargo, but Wells Fargo was really the only person who could have completely corrected that information, wasn't it? No, Your Honor. I think that TransUnion was the only person who could have corrected the information. They sent the form to Wells Fargo asking about it. They wanted to get the correct information from the person where the account was being held. That's correct. And Wells Fargo investigated and determined that TransUnion was wrong, that Wells Fargo had never reported the Chapter 7 bankruptcy, and that it agreed that Mr. Ferguson had not filed for bankruptcy. As Wells Fargo's reporting was accurate at all times, both before and after the investigation, and in that situation it's not strictly liable for any error that TransUnion may have made in failing to accurately report what Wells Fargo furnished. So what about this credit reporting resource guide? Isn't Wells Fargo required to follow that? It is required. It does follow the guide as a matter of practice, and it did follow the guide in this case, both in correctly furnishing the information in the first place and then in responding to the dispute by confirming that its original reporting was accurate. This remark that appeared on the TransUnion credit report, there's no evidence tying it to Wells Fargo. Wells Fargo doesn't have the ability to delete what TransUnion is reporting. And one of the many things that supports that is that the two other major credit reporting agencies in this case never furnished the Chapter 7 bankruptcy mark. If this were, in fact, something that Wells Fargo had reported, then surely the other credit agencies would be reporting as well. It was a TransUnion mistake for which Wells Fargo did not go in – essentially go into its records and delete the remark. You don't assert that Wells Fargo's response to the TransUnion's automated dispute verification was sufficient to correct the false bankruptcy report, do you? We think it is sufficient because it confirmed its original reporting was accurate and there was a code on there for TransUnion to modify its report. The fact that TransUnion didn't do that, again, can't be held against Wells Fargo. But you don't believe that Wells Fargo had the obligation? We don't believe that Wells Fargo had the obligation to correct the error as part of its investigation because of the language of 1681-S2. And, again, there are three decisions that have reached this same conclusion in addition to the district court. There's been no attempt by Mr. Ferguson to counter any of those in either his brief or his argumentation. And finally, I would emphasize that this is not a situation where there is no remedy. Mr. Ferguson did sue TransUnion, which was the entity that was actually responsible for this. As part of that suit, TransUnion fixed the problem that it had in fact created, and Mr. Ferguson received a settlement. The statute, there's no need to interpret the statute loosely to create an additional remedy that's not there for our party, but never to do the wrong in the first place. But did Wells Fargo at the time it returned those two forms know that Ferguson had paid off the debt? Yes, and I believe that was accurately reported. There was some discussion in counsel's opening remarks about how other items were disputed, you know, including the balance or things to that effect. But there's been no showing that any of that information was inaccurate either. The account was correctly furnished as being quoted and as being paid off. You know you say that, but they have a guy named Evan Hendricks who says it wasn't accurately reported. I think the only assertion he's made that with respect to is the cue code. And again, that becomes a legal issue about what the cue code is. I don't understand why that's a legal issue. If you say it was accurately reported because of whatever they wrote on the form, and they have an expert who says it wasn't accurately reported because they didn't use the proper code, I don't understand why that isn't a factual dispute that precludes summary judgment. Because you have to look at what's the purpose of the duty to modify or delete information that has already been furnished. And as this Court's precedent demonstrates in the Drew case, it's to prevent a situation where a furnisher provides an inaccurate information, does a reinvestigation, determines it's inaccurate, and then continues to report the inaccurate information. In this case, Wells Fargo never provided the – never provided the inaccurate information in the first place. And plaintiff has adduced no evidence to the contrary. Okay. Thank you. Thank you very much, Mr. Kemp. I think you've already responded, but why was Wells Fargo's response to the automated dispute verification insufficient? I think you've responded to that. If you wish to emphasize, go ahead. Judge George, there is no doubt that Wells Fargo undertook the duty to respond twice, and twice the response was insufficient according to the expert that we hired, Mr. Hendricks. The proof is in the pudding. We have the reports after those responses, and it continues to report inaccurately as if Mr. Ferguson had filed a bankruptcy when, in fact, he had not. And I think this notion that Wells Fargo could undertake the duty to conduct an investigation as it says it did, and then come back and say, well, we didn't have to do anything. We have no duty whatsoever, and we have no liability for mishandling the investigation is completely inconsistent with what happened in this case, the reality in this case. They did an investigation, and unfortunately, they got it wrong. Unfortunately, they also did not mark the account as disputed, which they are the only entity that could do that. TransUnion cannot do that. The precedent of this Court in Gorman v. Wolpoff and Abramson says this is an important duty to at least alert Mr. Ferguson's potential furnisher, excuse me, potential  owner, give him a chance to explain. Only Wells Fargo could have done that. And the testimony in this case is that they do it only when there's litigation or when a dispute is ongoing for longer than two days and only during the duration of what they consider to be the active dispute. Well, that's not the law. They're simply not following the law in this area, and at this point, I think they're trying to muster up a defense that they shouldn't be a covered entity at all. So their misapplication of their response, their failure to mark it as disputed is somehow justified because they were not the furnisher, or so they say now. But the reality is they acted as the furnisher from beginning to end. They are the only possible entity in this case that could be the furnisher. The statute contemplates a furnisher. TransUnion does not just invent account information. TransUnion makes mistakes, and we think they made mistakes in this case as well. But so did Wells Fargo. And the issue in this case is for the jury, whether Wells Fargo acted reasonably under the circumstances in handling those two investigations in August of 2009. Thank you very much. Thank you. Mr. Kemp, thank you, too. The case just argued is submitted. Good morning.
judges: George, Silverman, Wardlaw